## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **TREMAYNE DURHAM,** | |
| **Plaintiff,** | **Civil Action No. 24-4033 (MAS) (TJB)** |
| **v.** | **MEMORANDUM AND ORDER TO** |
| **BRANDEN STALLER,** *et al.* | **PRODUCE MEDICAL RECORDS** |
| **Defendants.** | |

This matter has been opened to the Court by the Honorable Maurice J. Gallipoli (ret.) of Porzio, Bromberg & Newman, P.C., *pro bono* counsel for Plaintiff Tremayne Durham ("Plaintiff"), seeking an order for production of Plaintiff's medical records to assist in his efforts to obtain the required Affidavit of Merit ("AOM") in support of Plaintiff's medical malpractice and professional negligence claims. (Text Minute Entry of 02/12/2025.)  Plaintiff, by and through his Complaint, alleges professional negligence claims against Defendants New Jersey State Prison, University Correctional Health Care ("UCHC"), Anthony Gangi, Derrick Bodtmann, Amy Emrich, Michael Crawford, Branden Staller ("Staller"), Kelitta Mosley-Massenat ("Mosley-Massenat"), Keelee Kaminski ("Kaminski"), Claudia Teh ("Teh"), O. Ofoma ("Ofoma"), and Rose Amazon ("Amazon"), (Compl. ¶¶ 180-83; Docket Entry No. 1) ("Compl."), and medical malpractice claims against Defendants UCHC, Staller, Teh, Ofoma, Kaminski, Mosley-Massenat, and Amazon, (*id.* ¶¶ 184-85). [1]  Plaintiff's claims are based on two primary allegations: the foregoing Medical Defendants either mistreated his back pain and failed to place him on the medical unit, failed to treat and prescribe him a special diet for his allergies, high blood pressure, high

---

[1] All defendants shall be collectively referred to as the "Medical Defendants."

cholesterol and pain while urinating, or both.[2]   In pertinent part, Plaintiff sets forth the following facts and allegations in his Complaint.[3]

Regarding his back pain, Plaintiff claims that he has experienced continuing and excruciating back pain dating back to November 8, 2017.   (*See generally,* Compl.)   On January 3, 2018, he was diagnosed with a lumber stenosis limiting his ability to walk, stand, lift, and bend.   (*Id.* ¶ 18.)   As a result of his back pain, Plaintiff fell due to extreme back pain and spasms on a multitude of occasions and was prescribed a cane to assist in his ambulation.[4]   (*Id.* ¶¶ 22, 34.)   To address and seek further relief from his back pain, Plaintiff consulted the Medical Defendants and other medical professionals.   According to Plaintiff, the following medical appointments and events occurred from 2022 to 2024:

> January 2, 2022, hospitalization at Capital Health Regional Medical Center: Plaintiff fell in the shower due to severe back pain, hit his head, and was sent to Capital Health Regional Medical Center.   (*Id.* ¶ 32.)

> March 17, 2022, with Defendant Amazon: Plaintiff was evaluated by Defendant Amazon for pain management, during which he requested to be placed on the medical unit due to chronic back pain and the exacerbation of the same when lifting items; Defendant Amazon denied his request.   (*Id.* ¶ 38.)

> April 11, 2022, with Roderick StaRosa, PT: Plaintiff attended physical therapy, during which he was instructed by Roderick StaRosa, PT to refrain from lifting or moving heavy "things" and from cleaning "on his fours."   (*Id.* ¶ 40.)

---

[2] In an attempt to seek relief from his back pain, allergies and medical conditions, Plaintiff states that he filed numerous grievances and inquiries which were considered by some, not all, of the Medical Defendants. (*Id.* ¶¶ 24-29, 33, 36-37, 52-57, 79, 81-84, 93-94, 97-100, 102-06, 109-12, and 132-37.) However, as this Order is focused on the production of medical records, the Court refrains from expounding on these grievances and inquiries.

[3] A copy of Plaintiff's Complaint is attached hereto as Exhibit A.

[4] Plaintiff claims to have fell due to his back pain on the following dates: June 18, 2019, (Compl. ¶ 20); May 31, 2020, (*id.* ¶ 23); April 15, 2021, (*id.* ¶ 30); January 2, 2022, (*id.* ¶ 32); April 7, 2023, (*id.* ¶ 46); September 23, 2023, (*id.* ¶ 50); and December 22, 2023, (*id.* ¶¶ 64, 66).

<u>June 3, 2022, with Defendant Amazon:</u> On June 3, 2022, Plaintiff once again was evaluated by Defendant Amazon for pain management, which indicated that his pain was aggravated by lifting and bending. (*Id.* ¶ 41.)

<u>July 29, 2022, with Defendant Staller:</u> Plaintiff had a chronic care visit with Defendant Staller, during which he requested to be placed on the medical unit and explained that he was unable to shower properly as there were no handrails in his housing unit's shower. (*Id.* ¶ 42.)  Defendant Staller denied this request and stated that Plaintiff's disability did not qualify him for the medical unit. (*Id.*)

<u>January 20, 2023, with Defendant Teh:</u> Plaintiff had a medical appointment with Defendant Teh, during which he requested to be placed on the medical unit and to be tested for seafood allergies.  (*Id.* ¶ 44.)  Defendant Teh denied Plaintiff's requests, allegedly threatening Plaintiff and reiterating that he neither would be placed on the medical unit nor receive a special diet.  (*Id.*)

<u>February 6, 2023, with Defendant Staller:</u> Plaintiff had a medical visit with Defendant Staller and, once again, requested to be placed on the medical unit and on a special diet.  (*Id.* ¶ 45.)  Plaintiff claims he did not receive adequate treatment during his visit with Defendant Staller.  (*Id.*)

<u>July 10, 2023, with Defendant Ofoma:</u> Plaintiff had a medical appointment with Defendant Ofoma, during which he showed her a cyst that had developed from his lack of showering; requested to be placed on the medical unit; requested to be housed on the ground floor due to experiencing pain when using stairs; and requested a special diet and allergy test for seafood. (*Id.* ¶ 47.)  Plaintiff told Defendant Ofoma that he was experiencing dizziness, vertigo, stomach pain, diarrhea, vomiting, and panic attacks from his current diet or medications. (*Id.*) Defendant Ofoma denied Plaintiff's request to be moved to the medical unit and explained that Plaintiff did not qualify for a special diet.  (*Id.*)

<u>August 30, 2023, with Defendant Teh:</u> Plaintiff had a sick call appointment with Defendant Teh, during which he requested to be placed on the medical unit and housed on the ground floor. (*Id.* ¶ 49.) Defendant Teh allegedly threatened Plaintiff and denied his request to be placed on the medical unit.  (*Id.*)

<u>October 16, 2023, with Defendant Teh:</u> Plaintiff had a sick call with Defendant Teh, during which he requested to be placed on the medical unit due to the lack of handrails in his unit and his inability to shower, as well as requested to be prescribed a special diet due to dizziness, vertigo from medication, and high blood pressure/high cholesterol.  (*Id.* ¶ 59.)   Defendant Teh allegedly threatened Plaintiff and denied his requests.  (*Id.*)

October 18, 2023, with Mia P. Castiglione, DO at University Hospital:  Plaintiff was seen by Mia P. Castiglione, DO for pain management, during which she recommended that Plaintiff "be on a flat floor" and for him to "use caution with daily activities."  (*Id.* ¶ 60.)

December 22, 2023, hospitalization at Capital Health Regional Medical Center: Due to a fall, Plaintiff was hospitalized at Capital Health Regional Medical Center for evaluation.  (*Id.* ¶¶ 66-69.)   During his hospitalization, Plaintiff was diagnosed to have "1. Degenerative Lumber Spinal Stenosis, 2. Intractable Back Paint[,] 3. Ambulatory Dusfunction[,] 4. Hypertension[,] [and] 5. Left renal stone." (*Id.* ¶ 70.)

December 23, 2023, housing in prison infirmary: Plaintiff was diagnosed with Acute Lumbar Strain.  (*Id.* ¶ 71.)  Upon his arrival to the prison from Capital Health Regional Medical Center, Plaintiff was housed in the prison infirmary and given medical treatment for several days.  (*Id.* ¶ 72.)

January 24, 2024, with Mia P. Castiglione, DO at University Hospital: Plaintiff was seen by Mia P. Castiglione, DO for pain management, during which she recommended that Plaintiff reside on the medical unit and refrain from lifting heavy objects.  (*Id.* ¶ 80.)

Regarding his request for a special diet, Plaintiff alleges that he was diagnosed with high blood pressure and high cholesterol in 2022, as well as with an allergy to fish and seafood on or about February 15, 2024.  (*Id.* ¶ 87.)  Plaintiff states that he was placed on chronic care to monitor these conditions. (*Id.*) According to Plaintiff, to address his medical conditions and allergies, the following medical appointments occurred from 2022 to 2023:

July 29, 2022, with Defendant Staller: Plaintiff had a chronic care visit with Defendant Staller, during which he requested a special medical diet due to his high blood pressure, high cholesterol, and allergic reactions to fish and seafood. (*Id.* ¶ 90.)  Plaintiff also complained of abdominal pain, pain while urinating, and a fear of experiencing a stroke or heart attack. (*Id.* ¶¶ 90-91.)  Plaintiff alleges that Defendant Staller denied his request and failed provide treatment to address his complaints.  (*Id.*)

October 27, 2022, with Defendant Amazon: Plaintiff had an office visit with Defendant Amazon, during which he requested a special diet and a food allergy

test. (*Id.* ¶ 92.) Plaintiff stated that he was experiencing dizziness, blurred vision, ear popping, and panic attacks. (*Id.*) Defendant Amazon denied Plaintiff's requests. (*Id.*)

November 7, 2022, with Defendant Staller: Plaintiff had an office visit with Defendant Staller, during which he requested a special medical diet due to his high blood pressure and high cholesterol. (*Id.* ¶ 95.) Plaintiff also stated that he was having hunger pangs, blurred vision, dizziness, panic attacks, difficulty in walking, ear popping, and pain while urinating, all of which he believed were due to his diet, medication, or high blood pressure. (*Id.*) Defendant Staller denied Plaintiff's request for a special diet. (*Id.*)

November 10, 2022, with Abigail Aniagyei, NP: Plaintiff had a medical appointment with Abigail Aniagyei, NP, during which he requested a special diet and stated that he was experiencing pain while urinating. (*Id.* ¶ 96.) Plaintiff's request was denied. (*Id.*)

February 6, 2023, with Defendant Staller: Plaintiff had an office visit with Defendant Staller, during which he requested a special diet due to his high blood pressure, difficulty walking, dizziness, blurred vision, panic attacks, and ear popping. (*Id.* ¶ 101.) Plaintiff also stated that he was experiencing pain while urinating. (*Id.*) Plaintiff's request was denied. (*Id.*)

August 30, 2023, with Defendant Teh: Plaintiff had an office visit with Defendant Teh, during which he requested a special diet and allergy test for fish and seafood. (*Id.* ¶ 107.) Plaintiff described that he was experiencing blurred vision, ear popping, vertigo, panic attacks, and pain while urinating. (*Id.*) Plaintiff's request was denied. (*Id.*)

September 28, 2023, with Ashraff Haggag, MD: Plaintiff had an office visit with Ashraff Haggag, MD regarding ear popping, dizziness, and passing out in his cell after eating dinner. (*Id.* ¶ 108.)

October 13, 2023, with Keisha Scott, RN, BSN: Plaintiff had an office visit with Keisha Scott, RN, BSN, during which he explained that he had been feeling dizzy after eating certain meals and taking certain medication. (*Id.* ¶ 113.)

January 24, 2023, with Mia P. Castiglione, DO: During a visit at University Hospital, Mia P. Castiglione, DO recommended that Plaintiff see a dietician/nutritionist to help with his medical symptoms and that he be placed on the medical unit. (*Id.* ¶ 130.)

In sum, Plaintiff alleges that the Medical Defendants—who had knowledge of his medical

5

conditions and diagnoses—failed to provide him with adequate treatment for his back pain and allergies, increasing the risk of harm and causing him injury, including physical and mental deterioration.  (*Id.* ¶¶ 180-85.)  In doing so, Plaintiff maintains that the Medical Defendants breached their duty of care owed to him and failed to prevent foreseeable danger and harm, thereby amounting to professional negligence and medical malpractice.  (*Id.*)

Under New Jersey law, in an action alleging professional malpractice or professional negligence, "[a] malpractice plaintiff must produce an affidavit of merit at the outset of the action, or face dismissal." *Diloreto v. Miller*, Civ. No. 21-20366, 2024 WL 2316608, at *5 (D.N.J. May 22, 2024).  Specifically, the New Jersey Affidavit of Merit ("AOM") statute provides in part:

> In any action for damages for personal injuries, wrongful death or property damage resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation, the plaintiff shall, within 60 days following the date of filing of the answer to the complaint by the defendant, provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices.

N.J.S.A. § 2A:53A-27.  The New Jersey AOM statute further provides, "The court may grant no more than one additional period, not to exceed 60 days, to file the affidavit pursuant to this section, upon a finding of good cause."  N.J.S.A. § 2A:53A-27.  However, the United States Court of Appeals for the Third Circuit instructs:

> Absent the plaintiff's showing of one of four limited exceptions, if the affidavit of merit is not filed within 60 (or 120) days, the failure to file requires dismissal of the action with prejudice. *Id.* § 2A:53A–29. The four limited exceptions are: (i) a statutory exception regarding lack of information; (ii) a "common knowledge" exception; (iii) substantial compliance with the affidavit-of-merit requirement; or (iv) "extraordinary circumstances" that warrant equitable relief.

*Nuveen Mun. Tr. v. WithumSmith Brown, P.C.*, 692 F.3d 283, 305 (3d Cir. 2012) (citations omitted).

6

On November 14, 2024, the Court granted Plaintiff's motion for the appointment of *pro bono* counsel, holding that *pro bono* counsel was warranted for the limited purpose of assisting Plaintiff in his efforts to obtain the required affidavit of merit in support of his medical malpractice and professional negligence claims. (Docket Entry No. 45.)   Moreover, the Court granted the 60-day statutory extension and subsequently found *sua sponte* that extraordinary circumstances existed to warrant an extension beyond the maximum 120-day statutory deadline to file the required AOM. (Docket Entry Nos. 45 and 49.)   Specifically, due to the obstacles experienced by the Court in attempting to appoint *pro bono* counsel for the limited purpose of assisting Plaintiff in his efforts to obtain an AOM, the Court extended the time within which Plaintiff may submit an AOM to sixty (60) days from the date *pro bono* counsel made an appearance in this matter.   (Letter Order of 12/23/2024, at 2; Docket Entry No. 49.)   *Pro bono* counsel was appointed on February 4, 2025, and entered a Notice of Appearance on February 13, 2025.   (Docket Entry Nos. 51, 54-55.)   The deadline to obtain the required AOM is set to expire on April 14, 2025.

Accordingly, the Court having appointed *pro bono* counsel for the limited purpose of assisting Plaintiff in his efforts to obtain the required affidavit of merit in support of his medical malpractice and professional negligence claims; and the Court having determined that such representation includes *pro bono* counsel assisting Plaintiff in the collection of medical records and the presentation of the same to a qualified expert for review and for the purpose of obtaining the required AOM, pursuant to N.J.S.A. § 2A:53A-27; and, as evidenced by his own allegations raised in his Complaint as well as his more than 100 pages of exhibits consisting mostly of his own medical records,[5] Plaintiff having implicitly authorized the release of his medical records; and to assist Plaintiff, who is incarcerated, and Plaintiff's *pro bono* counsel,

---

[5] Attached hereto as Exhibit B are samples of the exhibits that Plaintiff has attached to his Complaint, filed on the docket, and accessible to the public.

who is in the process of obtaining HIPAA authorizations from Plaintiff, in obtaining the necessary medical records and AOM within the governing deadline set to expire on April 14, 2025; and for good cause shown,

IT IS on this **28th** day of **February** 2025,

**ORDERED** that the Medical Defendants, as well as the entities and medical providers set forth below, are directed to produce all medical records pertaining to the aforementioned medical appointments and events set forth herein and in Plaintiff's Complaint, and to permit inspection and copying of the material; and it is further

**Capital Health Regional Medical Center**                    **University Hospital**
750 Brunswick Avenue                                                              150 Bergen Street
Trenton, NJ 08638                                                                    Newark, NJ 07103

**ORDERED** that the Medical Defendants and foregoing medical providers are directed to produce all relevant medical records to Plaintiff's counsel, the Hon. Maurice J. Gallipoli (ret.), at the place and date set forth below; and it is further

**Porzio, Bromberg & Newman, P.C.**                    March 14, 2025
100 Southgate Parkway
P.O. Box. 1997
Morristown, NJ 07962
*Pro Bono Counsel for Plaintiff Tremayne Durham*

**ORDERED** that Plaintiff's counsel is directed to serve a copy of this Order on the foregoing non-party medical providers.

s/Tonianne J. Bongiovanni
**Hon. Tonianne J. Bongiovanni**
**United States Magistrate Judge**

# EXHIBIT A

Tremayne Durham, Plaintiff-Pro-Se
647007/ OS01613467
NJSP
P.O. Box 861
Trenton, NJ 08625



RECEIVED
MAR 20 2024
AT 8:30
CLERK, U.S. DISTRICT COURT - DNJ

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

```
--------------------------x
TREMAYNE DURHAM,          :
    Plaintiff,           :
                         :
                         :
       v.                :
                         :
                         :
BRANDEN STALLER, MD      :      CIVIL ACTION NO.
AMY EMRICH, ASSISTANT    :      _____
ADMINISTRATOR            :
ANTHONY GANGI, ASSOCIATE :      COMPLAINT
ADMINISTRATOR            :
MICHAEL CRAWFORD, LIEUTEN,:
ANT,                     :
DERRICK BODTMANN, ASSIST- :
ANT ADMINISTRATOR        :
KELITTA MOSLEY-MASSENAT, :
NURSE,                   :
CLAUDIA TEH, APN         :
O. OFOMA, NURSE          :
ROSE AMAZON, APN         :
KEELEE KAMINSKI, NURSE   :
NEW JERSEY STATE PRISON, :
UNIVERSITY CORRECTIONAL- :
HEALTHCARE, RUTGERS,     :
                         :
    Defendants           :
--------------------------:
```

## COMPLAINT

Tremayne Durham, Plaintiff, Pro-Se, alleges and complains against
Defendants, B. Staller, A. Emrich, A. Gangi, D. Bodtmann, M.
Crawford, K. M. Massenat., K. Kaminski, C. Teh, O. Ofoma, R.
Amazon, New Jersey State Prison, University Correctional
Healthcare, Rutgers.

## JURISDICTION AND VENUE

1.    This is a civil ation authorized by 42 U.S.C. 1983 to

redress the deprivation, under color of state law, of rights

secured by the Constitution of the United States. The Court
has jurisdiction under 28 U.S.C. §1331 and § 1343(a) (3).
Plaintiff seeks declatory relief pursuant to 28 U.S.C. and §2201
and §2202. 28 U.S.C. § 2283 and § 2284 and Rule 65 of the Federal
Rules of Civil Procedure. Additionally this court can use
supplemental authority over state claims under 28 U.S.C. § 1367.

## PREVIOUSLY DISMISSED ACTIONS

2.    Plaintiff has not had an action or appeal dismissed on
three or more occasions on the grounds that the action or appeal
was frivolous, malicious, or failed to state a claim upon which
relief may be granted.

## PARTIES

3.    Plaintiff, TREMAYNE DURHAM, is a Oregon state prisoner
convicted and sentenced by the state of Oregon and is confined
as an out of state prisoner pursuant to the Out of State Compact
Agreement Act (hereafter I.C.A.) with the New Jersey Department
of Corrections at New Jersey State Prison (hereafter NJSP).
At all times relevant to this complaint defendants were acting
under color of state law.

4.    Defendant B. Staller was a medical doctor (hereafter
Staller) during the time of the violations complained of.
Defendant Staller carries out his official duties at State
University of New Jersey c/o New Jersey Department of Corrections
Bates Building, 2nd Floor, Whittlesey Road, P.O. Box, 863
Trenton, NJ 08625.  Defendant Staller is responsible for
providing inmates with medical care. These actions are to be
carried out in a consistent manner with governing rules in 10:A,

state laws, and the U.S. Constitution.  Defendant Staller is
being sued in his individual and official capacity.

5.    A. Emrich is a Associate Administrator (hereafter Emrich)
during the time of the violations complained of. Defendnant
Emrich carries out her official duties at New Jersey State
Prison, Third and Federal Street, Trenton, NJ 08625. Defendant
Emrich is responsible for implementing rules, policy and
procedure, operating practices, and has supervisory authority
to modify, change, deny, or approve in a consistent manner with
the governing rules in 10:A, state laws and the U.S.
Constitution, as well as enforcing the same. Defendnat Emrich
has supevisory authority over Michael Crawford and can correct
his behavior in regard to 10:A, state laws and the U.S.
Constitution. Defendant Emrich is being sued in her individual
and official capacity.

6.    Defendant A. Gangi is the Assistant Administrator
(hereafter Gangi) during the time of the violations complained
of. Defendant Gangi carries out his official business at New
Jersey State Prison, Third and Federal Street, Third and Federal
Street, Trenton, NJ 08625. Gangi is responsible for implementing
rules, policy and prodeure, operating practices, and has
supervisory authority to modify, change, deny or approve as
such in a consistent manner with the governing rules as defined
in 10:A, state laws and the U.S. Constitution, as well as
enforcing the same. Defendant Gangi has supervisory authority
over Michael Crawford and can correct his behavior in regard
to 10:A, state laws and the U.S. Constitution. Defendant Gangi

is being sued in his individual and official capacity

7.     Defendant D. Bodtmann is the Assistant Administrator (hereafter Bodtmann) during the time of the violations complained of. Defendant Bodtmann carries out his official business at New Jersey State Prison, Third and Federal Street, Trenton, NJ 08625. Bodtmann is responsible for implementing rules, policy and procedure, operating practices, and has supervisory authority to modify, change, deny or approve as such in a consistent manner with the governing rules as defined in 10:A, state laws, and the U.S. Constitution, as well as enforcing the same. Defendant Bodtmann has supervisory authority over Michael Crawford and can correct his behavior in regard to 10:A, state laws and the U.S. Constitution. Defendant Bodtmann is being sued in his individual and official capacity.

8.     Defendant Michael Crawford (hereafter Crawford) is the Lieutenant during the time of the violations complained of. Defendant Crawford carries out his official business at New Jersey State Prison, Third and Federal Street, Trenton, NJ 08625. Crawford is responsible for implementing rules, policy and procedure, operating practices, and has supervisory authority to modify, change, deny or approve as such in a consistent manner with the governing rules as defined in 10:A, state laws and the U.S. Constitution, as well as enforcing the same. Defendant Crawford is being sued in his individual and official capacity.

9.     Kelitta Mosley-Massenat is the nurse during the time of the violations complained of (hereafter Massenat). Defendant Massenat carries out her official duties at State University

of New Jersey c/o New Jersey Department of Corrections, Bates
Building, 2nd floor, Whittlesey Road, P.O. Box 863, Trenton,
NJ 08625. Defendant Massenat is responsible for providing inmates
with medical care and overseeing other medical staff under her,
she is the Head Nurse. Her actions are to be carried out in
a consistent manner with governing rules in 10:A, state laws
and the U.S. Constitution. Defendant Massenat has supervisory
authority over K. Kaminski, C. Teh, O. Ofoma, R. Amazon, and
can correct their behavior in regard to 10:A, state laws and
the U.S. Constitution. Massenat is being sued in her individual
and official capacity.

10.    Defendant Keelee Kaminski (hereafter Kaminski) is the
nurse during the violations complained of. Defendant Kaminski
carries out her duties at State University of New Jersey c/o
The New Jersey Department of Corrections, Bates Building, 2nd
floor, Whittlesey Road, P.O. Box, 863, Trenton, NJ 08625.
Defendant Kaminski is responsible for providing inmates with
medical care.
And her actions are to be carried out in a consistent manner
with governing rules in 10:A, state laws and the U.S.
Constitution. Defendant Kaminski is being sued in her individual
and official capacities.

11.    Defendant Claudia Teh (hereafter Teh) is a nurse during
the violations complained of. Defendant Teh carries out her
duties at State University of New Jersey c/o The New Jersey
Department of Corrections, Bates Building, 2nd floor, Whittlesey
Road, P.O. Box 863, Trenton, NJ 08625. Defendant Teh is

responsible for providing inmates with medical care. And her actions are to be carried out in a consistent manner with governing rules in 10:A, state laws and the U.S. Constitution. Defendant Teh is being sued in her individual and official capacity.

12.    Defendant O. Ofoma (hereafter Ofoma) is a nurse during the violations complained of.  Defendant Ofoma carries out her duties at State University of New Jersey c/o The New Jersey Department of Corrections, Bates Building, 2nd floor, Whittlessey Road, P.O. Box 863, Trenton, NJ 08625. Defendant Ofoma is responsible for providing inmates with medical care. And her actions are to be carried out in a consistent manner with governing rules in 10:A, state laws and the U.S. Constitution. Defendant Ofoma is being sued in her individual and official capacity.

13.    Defendant R. Amazon (hereafter Amazon) is a nurse during the violations complained of. Defendant Amazon carries out her duties at State University of New Jersey c/o New Jersey Department of Corrections, Bates Building, 2nd floor, Whittlessey Road, P.O. Box 863, Trenton, 08625. Defendant Amazon is responsible for providing inmates with medical care. And her actions are to be carried out in a consistent manner with governing rules in 10:A, state laws and the U.S. Constitution. Defendant Amazon is being sued in her individual and official capacity.

14.    Defendant New Jersey State Prison (hereafter NJSP) is the entity complained of. Defendant NJSP carries out its duties

at Third and Federal Street, Trenton, NJ 08625. NJSP is
responsible for implementing rules, policy and procecdure,
operating practices, and has supervisory authority to modify,
change, deny or approve as such in a consistent manner with
the governing rules as defined in 10:A, state laws and the U.S.
Constitution, as well as enforcing the same. Defendant NJSP
has supervisory authority over M. Crawford and can correct his
behavior in regard to 10:A, state laws and the U.S. Constitution.
Defendant NJSP is being sued in its individual and official
capacity.

15.    Defendant University Correctional Health Care, Ruters
(hereafter UCHC) is the medical entity which has contracted
with NJSP during the time of the violations complained of.
Defendant UCHC carries out its official duties at State
University of New Jersey c/o New Jersey Department of
Corrections, Bates Building, 2nd floor, Whittlesey Road, P.O.
Box 863, Trenton, NJ 08625. Defendant UCHC is responsible for
implementing rules, policy & procedure, operating practices,
and has suprvisory authority to modify, change, deny or approve
in a consistent manner with governing rules as defined in 10:A,
state laws and the U.S. Constitution. as well as enforcing the
same. UCHC has supervisory authority over B. Staller, K.
Kaminski, K. M. Massenat, C. Teh, O. Ofoma, R. Amazon and can
correct their behavior in regard to 10:A, state laws and the
U.S. Constitution. Defendant UCHC is being sued in its individual
and official capacity.

**FACTS**

## IN REGARD TO ACCESS TO MEDICAL UNIT

16.    On 3/30/2016 Plaintiff had sick call visit in regard to lower back pain, which occured from lifting his own boxes to move to a different unit. Plaintiff has also been to medical several other times in the past in regard to lower back pain.(see exhibit A)

17.    On 11/08/2017 Plaintiff had exruciating back pain while in the messhall, which exacerbated when he filled a storage bin with water to wash clothes when he got back to his unit, when he picked up bin his back locked and he fell this caused him pain. (see exhibit A-1, A-2).

18.    On 1/3/2018 Plaintiff was diagnosed with lumbar stenosis which limits his walking, standing, lifting, bending.(see exhibit A-3)

19.    On 5/20/2019 Plaintiff was prescribed a cane to assist with his mobility. (See exhibit A-4)

20.    On 6/18/2019 while plaintiff was at sick call due to having back pain, while in the holding area when he stood up his back pain exacerbated and he collapsed in the holding area this caused him pain. (see Exhibits A-5, A-6, A-7)

21.    On 08/19/2019 Plaintiff had a sick call visit with Claudia Teh, APN. Plaintiff was seen for low back pain with no improvement despite medication use and physical therapy.(see exhibit A-16)

22.    On 11/11/2019 Plaintiff had his cane renewed for ambulation. (see Exhibit A-8)

23.    On 5/31/2020 Plaintiff was in quarantine in the shower

when he had severe back pain that cascaded down to his legs and he fell this caused him pain.( See Exhibits A-9, A-10)

24.    On 6/13/2020 Plaintiff filed a inquiry about their not being handrails in the shower in 7up quaramtine. (see exhibit A-11)

25.    On 7/7/2020 Amy Emrich respnded to inquiry. (see Exhibit A-11)

26.    On 6/30/2020 Plaintiff filed a grievance aboout issue.(see Exhibit A-12)

27.    On 7/7/2020 Amy Emrich responded. (See exhibit A-12)

28.    On 7/13/2020 Plaintiff appealed grievance.(see exhibit A-12)

29.    On 7/28/2020 Amy Emrich responded to appeal.(See Exhibit A-12)

30.    On 4/15/2021 Plaintiff had extreme back pain and spasm while in his cell and fell, he later fell again due to lower back pain on his housing unit this caused him pain.(see Exhibit A13, A-14, A-15)

31.    On 3/08/2021 Plaintiff was prescribed a cane to assist in his ambulation.( See exhibit B)

32.    On 1/02/2022 while in shower on 2EE quarantine unit plaintiff had severe back pain and fell in the shower and hit his head and was sent to Capitol Health Regional Medical Center (see Exhibit B-1, B-2, B-3, B-4)

33.    On 1/14/2022 Plaintiff filed inquiry in regard to having his back pain exacerbated when he lifts his property to clean. On 2/4/2022 G. Nathan responded to inquiry. (see exhibit B-4a)

34.    On 3/02/2022 Plaintiff was prescribed a cane to assist in his ambulation, Plaintiff was also to be housed on ground floor only.(See exhibit B-5)

35.    On 3/16/2022 Plaintiff filed a grievance requesting medical unit housing which was denied by Keelee Kaminski because she said their was not adequate documented justification.(see exhibit B-6)

36.    On 3/17/2022 plaintiff appealed the grievance response reiterating the same issue. (see Exhibit B-6)

37.    On 5/18/2022 Kelitta Mosley-Massenat responded refusing to correct the problem.(see exhibit B-6)

38.    On or about 3/17/2022 Plaintiff was seem by Rose Amazon, APN for Pain Management, Plaintiff requested several issues including to be placed on the medical unit due to exacerbation of pain when lifting his property to clean and chronic back pain due to past injuries caused by falls. Rose Amazon stated "you are not that disabled at least you can still walk I will not have you placed on the medical unit, their are guys who have other conditions and are in wheelchairs."(see exhibit B-7)

39.    On 3/22/2022 Plaintiff wrote letter to University Correctional Health Care, Rutgers in regard to getting placed on the medical unit. (see Exhibit B-8)

40.    On 4/11/2022 Plaintiff was seen for <u>Physical Therapy where he was given a Treatment Plan and Assessed. Roderick StaRosa PT advised: "not to lift/move heavy things in his cell nor go on his 4's when he is cleaning his cell."</u> (see exhibit B-9, B-10)

41.     On 6/3/2022 Plaintiff was seen for Pain Management which indicated pain is aggravated by lifting, bending, Rose Amazon, APN was Provider.(see exhibit B-11)

42.     On 7/29/2022 Plaintiff had chronic care visit with Branden Staller, MD, Plaintiff requested several things including placement on medical unit. Plaintiff showed Staller a cyst causing him pain that developed on his back due to not showering, and explained their are no handrails in the shower on the unit he is housed. Branden Staller replied "You do not qualify because your disability is not serious enough, anyway I will not go against my colleagues they have decided not to place you their, just get help when you have to clean your cell".

43.     Plaintiff was told several times by correctional staff another inmate will not be authorized to be in another inmates cell to asisst him in cleaning and moving his  property this is NJSP policy.

44.     On 1/20/2023 Plaintiff had a medical appointment with Claudia Teh he requested to be placed on the medical unit, and to be tested for allergies he had to seafood which caused  him nausea and vomiting and passing out. Plaintiff complained of cyst causing him pain on his back due to not being able to shower, their are no handrails unit plaintiff is housed on. Claudia replied  "stop complaining or I will make things bad for you, my co-workers have decided you will not be going to the medical unit, and you will not be getting a special diet."(see exhibit B-12)

45.     On or about 2/06/2023 Plaintiff had medical visit with

Branden staller, MD Plaintiff requested placement on the medical
unit and special diet. Plaintiff did not receive adequate
treatment for his heartburn and vomiting etc, Staller knew
medication did not work.(see exhibit B-13,B-14)

46.    On 4/7/2023 at approximately 8:00 am plaintiff was
cleaning his cell, when he got hot water to bring it back to
his cell he had severe back pain that went down to his legs
and he fell,and the hot water from the bucket spilled on him
which caused serious burns to his feet.(see exhibit's C, C-1,
C-1a, C-2, C-4)

47.    On or about 7/10/2023 Plaintiff had a medical appointment
with O. Ofoma, APN He showed her a cyst that developed on his
back from not being able to shower which caused him pain,  due
to no hand rails in the shower and from past falls plaintiff
requested placement on medical unit. And to have paperwork
renewed to be housed on ground floor only, due to pain going
upstairs and pain exacerbated by moving his property to clean
his cell. Plaintiff also requested a special diet and allergy
test for fish and  seafood because he was sick after eating
these foods.  Told Ofoma he was having dizziness, vertigo,
diarrhea, stomache pain, vomiting, panic attacks from the AHA
diet or medication he was on. O. Ofoma said "You have to be
in a wheelchair for the medcial unit and the policy is their
is no special diet for high blood pressure/high cholesterol,
lactose intolerance, fish just dont eat the food".

48.    Plaintiff is on unit 1 Right which has stairs he has
to use to go to all passes (i.e. messhall, programs, medical

appointments, gym, yard, library, law library, legal calls,

visits, notary, property. Their are no handrails in the shower

area on 1 right .

49.   On 8/30/2023 had plaintiff had sick call appointment with

Claudia, Teh, APN, plaintiff requested placement on medical

unit and discussed the cyst on his back that caused him pain.

Plaintiff told her their are no handrails in shower where he

is housed. Claudia Teh denied placement on medical unit and

to have permision to be housed on ground floor only renewed.

Claudia Teh, APN stated "stop complaining I will make things

worse". Plaintiff relayed to her he had pain going upstairs.

per~is~ ~n to ~~~~~ o ~~~~~~~ ~~~~. ~~ ~~a
Teh ~~ ~~~~~~~ ~~~~~ I wi~~ ~~~ ~~~~ ~~se".
~~a~ ~~ ~~~~~~~ ~~ ~~~ p~~~~ ~~~~ ~~~~

50.    On 9/23/2023 Plaintiff was cleaning his cell and  lifted
his property which caused him back pain, subsequently while
in the gym plaintiff experienced severe lower back pain that
cascaded down to his legs and fell, this caused him pain.
Plaintiff  was sent to the infirmary in a wheelchair on a
emergency medical pass.(see exhibit C-3)

51.    On 9/28/2023 Plaintiff had sick call visit for dizziness
he passed out after difficulty breathing and having nausea in
his cell 9/27/23 after eating dinner which had meatballs(allergen
to fish)see exhibits(C-3a, C-3b, C-3c,C-9, C-10, C-11, G1, H-7)

52.    On 10/10/2023 Plaintiff filed a inquiry in regard to
being housed on medical unit because of incident of having being
burned with hot water.(see Exhibit C-5)

53.    On 10/11/2023 Kelitta Mosley-Massenat responded to
inquiry.(see Exhibit C-5)

54.    On 10/12/2023 Plaintiff filed a grievance to get housed
on the medical unit.(see exhibit C-6)

55.    On 10/13/2023 Derrick Bodtmann responded denying request
for medical unit.(see Exhibit C-6)

56.    On 10/15/2023 Plaintiff appealed the grievance
response.(see exhibit C-6)

57.    On 10/16/2023 Michael Crawford responded denying
appeal.(see exhibit C-6)

58.   10/13/23 Plaintiff went to sick call for dizziness,vertigo.
(see exhibit C-12, C-13)

59.   On 10/16/2023 Plaintiff went to sick call Claudia Teh,
APN  plaintiff requested to be placed on medical unit because
of no handrails on his unit and not being able to shower, also
complained of cyst (lump) on back from not being able to shower
causing him pain. Plaintiff also requested special diet due
to dizziness, vertigo from medicaion, food or high blood
pressure/high cholesterol. Claudia Teh, APN stated "This is
not Burger King you can not have it your way, furthermore you
are getting on my nerves with this complaining.Your disability
is not so bad you ar not wheelchair bound. All the medical staff
here, Ofoma, has decided since you continue to complain we will
make sure you never get on the medical unit neither housed on
the ground floor."(see exhibit C-7, C-8)

60.   On 10/18/2023 Plaintiff was seen by Castiglione Mia,
P, DO (Doctor of Osteopathy) at University Hospital, for pain
management where she recommeneded plaintiff be on a flat
floor..., use caution with daily activities, and stated "...
acute flares in pain may worsen after periods of aggressive
movement etc." (see exhibits D, D1, D-2, D-3)

61.   On 10/20/2023 Consultation Report written by Claudia
Teh, APN in regard to doctors recommendation on 10/18/2023.
Claudia Teh, APN stated "Try to avoid ascending/descending
stairs". (see exhibit D-4)

62.   Due to where plaintiff is housed in general population
and has to ascend and descend stairs (see supra paragraph's

48, 49). Plaintiff is housed on 1 right housing unit where you have to use stairs leaving and entering the unit for movements (i.e. messhall, yard, gym, law library, general library, notary, visits, medical appointments, rehabilitaiton/therapeutic programs.

63.     UCHC has a policy, practice and or custom of denying prisoners with serious back condition and use a cane from the medical unit, and also denying special/medical diets for inmates who have relevant medical conditions such as high blood pressure and high cholesterol. Plaintiff was told by Branden Staller" per policy of UCHC they do not give special diets to those inmates who have high blood pressure or high cholesterol. And the same goes per UCHC policy you have to be ambulating in a wheel chair to be placed on the medical unit."(see exhibits F-7, F-8)

64.     On 12/22/2023 while on 1 right housing unit approximaately 9:00 am plaintiff was cleaning his cell and moved his property (boxes, storage crates). While doing this he experienced a sharp pain in his lower back and fell in his cell.

65.     Plaintiff felt involuntary urination at this time.

66.     Later on 12/22/2023 during lunch movement plaintiff attempted to go upstairs and had severe lower back pain exacerbate that cascaded down to his legs and he fell down the stairs, this caused him pain.(see exhibits D-5, D-6, D-7, D8)

67.     A medical emergency code 53 was called and plaintiff was placed in wheelchair and sent to clinic and given medical treatment: KETROLAC 30MG-ML INJECTION TROMETHAMINE

68.    Plaintiff was later admitted to the prison infirmary
and examined for concerns of mild/early cauda equina syndrome.

69.    Plaintiff was subsequently the same day 12/22/2023 put
on a stretcher and placed in ambulance and was sent to Capital
Health Regional Medical Center for further evaluation.

70.    On 12/23/2023 Plaintiff was discharged from the hopital
(supra)and found to have 1. Degnerative Lumbar Spinal Stenosis,
2. Intractable Back Pain  3. Ambulatory Dysfunction 4.
Hypertension 5. Left renal stone.(see Exhibits E, E-1-, E-2)

71.    On 12/23/2023 Plaintiff was diagnosed with Acute Lumbar
Strain.(See Exhibits E, E-1, E-2)

72.    On 12/23/2023 Plaintiff upon arrival back to prison was
housed in the prison infirmary and given medical treatment
several days. (see Exhibit's E, E-1, E-2)

73.    Plaintiff's medical records from Capitol Health Regional
Medical Center was given to him via the medical records
department at New Jersey State Prison in regard to Education
on Lumbar Strain. Which states: A lumbar strain, which is
sometimes called a low-back strain, is a stretch or tear in
a muscle or the strong cords of tissue that attatch to
bone(tendons) in the lower back (lumbar spine). This type of
injury occurs when muscles or tendons are stretched beyond
their limits. (See Exhibits E-3, E-4, E-5, E-6, E-7)

74.    Causes of Lumbar Strain ...Twisting or overstretching
the back. This may result from doing activities that need a
lot of energy, such as lifting heavy objects.

75.    What increases the risk?: People who do repeated lifting,

bending, or other movements that involve their back.

76.    Declaration of inmate Thomas Parker(see exhibit E-8)

77.    Declaration of inmate Jesse Watkins 634035/ 25457B (see exhibit E-9)

78.    Declaration of inmate Marion Jacobs 000035190A-47408(see exhibit E-10)

79.  On 12/29/2023 Plaintiff filed a inquiry in regard to incident on 12/22/2023. (see exhibit E-14)

80.    On 1/24/2024 Plaintiff went to University Hospital for Pain Management with Castiglione, Mia P, DO (Doctor of Osteopathy) where she"recommended that patient reside on the medical unit, as he continues to injure himself and fall while on the other unit.... should not be lifting heavy objects."(See Exhibits E-11, E-12, E-13)

81.    On 1/12/2024 Plaintiff filed a greivance in regard to being moved to medical unit. (see exhibit E-15)

82.    On 1/22/2024 Derrick Bodtmann responded denying grievance. (see exhibit E-15)

83.    On 1/25/2024 plaintiff appealed the grievance.(see exhibit E-15)

84.    On 2/5/2024 Amy Emrich responded to appeal.(see exhibit E-15)

85.    The medical unit located on 3C on the north compound can be accessed by elevator. For access to all movements the elevator can be used too (i.e. medical appointments, visits, law library, general library, notary, therapeutic/rehabilition programs, legal calls, proerty room. Meals are served on the

unit, inmate workers assist in cleaning of cells and moving
inmates property, the showers have handrails in them. (see
Exhibits E-9, E-10)

86.    Per New Jersey State Prison policy canes are not allowed
in the messhall, yard or gym.

### FACTS:

### IN REGARD TO RECEIVING SPECIAL/MEDICAL DIET

87.    Plaintiff was diagnosed with high blood pressure and
high cholesterol on or about 2022,subsequently diagnosed with
allergy to fish and seafood on or about 2/15/2024 And was put
on chronic care to monitor these serious conditions. (see exhibit
F, F-1, J)

88.    According to U.S. Department of Health and Human Services
National Institutes of Health, National Heart, Lung, and Blood
Institute's Guide to Lowering Your Cholesterol With Therapeutic
Lifestyle Changes. Plaintiffs Cholesterol Classification is
High.(see exhibits F, F-1, F-2, F-3)

89.    On 1/06/2023 Plaintiff's Lab Report: LIPID PANEL,STANDARD
showed he had HIGH CHOLESTEROL, [H] on the sheet indicating
high.(see exhibit F)

90.    On 7/29/2022 Plaintiff had a chronic care visit with
Branden Staller, MD. (hereafter Staller) Among several issues
raisd he requested a special/medical diet due to his high blood
pressure and high cholesterol and allergic reactions he had
to fish and seafood. Plaintiff also stated he had fear of getting
a stroke or heart attack, and that he had pain when urinating.
Branden  Staller denied his request.

91.    Plaintiff was never offered any cholesterol medication
and or medical/special diet. Plaintiff complained of abdominal
pain he had when drinking milk/products with milk. Nothing was
done for the problem.

92.    On 10/27/2022 Plaintiff had Office visit with Rose Amazon
and requested a special diet for his high blood pressure/high
cholesterol. And stated he was having dizziness, blurred vision,
ear popping, panic attacks either from the medication food served
or high blood pressure. Rose Amazon denied his request for a
special diet,and to take a food allergy test for fish and
seafood. Nothing done for his lactose intolerance.

93.    On 11/1/2022 Plaintiff filed a inquiry in regard to
getting a special diet.(see exhibit F-5)

94.    On 11/08/2022 Kelitta Mosley-Massenat responded.(see
exhibit F-5)

95.     On 11/7/2022 Plaintiff had office visit with Branden
Staller, MD which one of his requests/concerns was a
special/medical diet due to his high blood pressure and high
cholesterol. And that he was having hunger pangs due to missing
certain foods and meals that he told him not to eat. Plaintiff
also told hem he was having blurred vision, dizziness, panic
attacks, difficulty in walking, and ear popping which he
believes was due to prescribed medication and or his AHA diet
or high blood pressure. Plaintiff also said he had pain when
urinating. Branden Staller, MD told plaintiff "he is on the
AHA diet and that no other medical diets are available except
for diabetic diet and renal diet for people with those health

issues."(see Exhibit F-7, F-8)

96.    On 11/10/2022 Plaintiff was seen by Abigail Aniagyei,NP and requested special diet due to his health condition, and told her he had pain while urinating request denied.

97.    On 11/21/2022 Plaintiff filed a grievance in regard to receiving a special diet.(see exhibit F-6)

98.    On 11/23/2022 Alycia Lewis responded.(see exhibit F-6)

99.    On 11/24/2022 Plaintiff appealed grievance response.(see exhibit F-6)

100.    On 11/24/2022 Anthony Gangi denied appeal.(see exhibit F-6)

101.    On 2/06/2023 Plaintiff had Office visit with Branden Staller, MD and requested special diet because either his high blood pressure the AHA diet food and or medication given caused him difficulty walking, dizziness, have blurred vision, panic attacks, and ear popping. Plaintiff also told him he had pain while urinating, Branden Staller denied this request.

102.    Plaintiff filed a inquiry in regard to having a special diet, NJSP23033694.

103.    On 8/25/2023 Plaintiff filed a grievance in regard to getting a special diet.(see exhibit F-9,)

104.    On 8/25/2023 Derrick Bodtmann responded to grievance.(see exhibit F-9)

105.    On 8/27/2023 Plaintiff appealed grievance response.(see exhibit F-9)

106.    On 9/1/2023 Amy Emrich responded to appeal.(see Exhibit F-9)

107.    On 8/30/2023 Plaintiff had office visit with Claudia Teh APN and he requested a special diet and allergy test for fish and seafood due to blurred vision, ear popping, vertigo, panic attacks which plaintiff believe was caused by the medication, his high blod pressure or diet he was on. Plaintiff also told her he had pain when urinating. This request was denied by Claudia Teh, APN.

108.    On 9/28/2023 Plaintiff had Office visit with Ashraff Haggag, MD in regard to ear popping, dizziness and passing out in his cell after eating dinner (spaghetti and meatballs w/tomato sauce) which he got from the messhall.

109.    On 10/03/2023 Plaintiff filed a inquiry in regard to dizziness, blurred vision.(see exhibit F-10)

110.    On 10/04/2023 Kelitta Mosley-Massenat responded.(see exhibit F-10)

111.    On 10/10/2023 plaintiff filed a grievance in regard to his dizziness, blurred vision etc.(see exhibit F-11)

112.    On 10/12/2023 Kelitta Mosley-Massenat responded.(see exhibit F-11)

113.    On 10/13/2023 Plaintiff had office visit with Keisha Scott,RN, BSN he relayed he has been feeling dizzy after eating certain meals and taking medication.

114.    Plaintiff is presently on a diet erroneously called heart healthy which exacerbates his medical condition, he is served items and meals he is told not to eat. They are processed, high in saturated fat, transfat, sodium. (see exhibit G, G-1, G-2)

115.    Foods such as : Assorted Fruit Juice, Scrambled Eggs, Margarine, Milk, Cheese, Cheese Sauce, Hot Dogs, Breakfast Sausage Links, Hard Cooked Eggs, Turkey Ham, Sausage Gravy, Hambuger, Meatloaf, Tuna Macaroni Salad, Meatballs, Chicken Salad, Potato Puffs, Bolgna, Taco Meat, Seafood Cakes, Veal Sausage, Cheese Sause, Veal Pattie, Seafood Salad.(see exhibits G, G-1, G-2)

116.    Plaintiffs high blood pressure/high cholesterol would be higher but he has to try and avoid certain meals and foods, Plaintiff has had to guess at what to avoid due to cursory and inadequate advice by medical staff.

117.    Plaintiff's medications were Lisinopril 10-12.5 MG, Meloxicam 15 MG, Duloxetine 60 MG, Tizanidine HCL 2MG. Medication was changed by medical staff at NJSP which plaintiff believes has hindered his management of high blood pressure and may have had adverse side effects.(see exhibits D, D-2, E-11,)

118.    According to AHA (American Heart Association) Diet Guidelines, Plaintiff's issued heart health diet at prison was not in accordance with mandated guidelines. (see Exhibit G-3)

119.    Saturated Fat average per day for breakfast was 7.73g grams, Trans Fat was *1.52 grams per breakfast meal,(*indicating missing or incmplete nutrient data), Cholesterol 162.44 mg average per day per breakfast meal.(see exhibit G-4,G-5,G-6)

120.    Plaintiff's daily lunch meals contained high, saturated fat, and transfat. (*denotes combined nutrient totals with either missing or incomplete nutrient data see exhibits G-7, G-8, G-9)

121.    Most of Plaintiff's issued meals contained TRANSFAT which

are not part of a heart healthy diet.(see Exhibit G-3)

122.    INTERNAL MANAGEMENT PROCEDURE MED.IMHC.006 Therapeutic

Diets III **POLICY** The NJ Department of Corrections (NJ DOC)

provides health care sevices through a contracted medical

provider and mandates that the following medical services be

made available to those individuals within the NJ DOC for:E.

Any other medical condition which the treating physician believes

will cause deterioration of the IP's health or uncontrolled

suffering. (see exhibits G-10, G-11, G-12, G-13, E-12)

123.   NJ DEPT OF CORRECTIONS RECIPE PREP SHEET's Dated

11/28/2023:

shows high levels of cholesterol, sodium, saturated fat, transfat

for several items served plaintiff as part of the erroneously

named heart healthy menu.

123a.    Plaintiff told medical staff in the foregoing dates

he had sick call/medical visits in the complaint he had abdominal

pain, nausea and diarrhea when eating food that contained milk

such as meatloaf,sausage gravy, rice pudding, vanilla pudding,

cheese, chicken cheese steak, cheese sauce, chicken cheese

casserole, etc. Nothing was ever done to correct the problem

but the issue was brushed off by medical staff as trivial and

plaintiff was told that it was nothing that they could do about

it. Even though  a special diet was requested by plaintiff.

Medical staff notified was Branden Staller, R. Amazon, C. Teh,

O. Ofoma(see exhibits C-1a, H-3, H-6, G-1, G-2, G-3)

124.  Fruit juices served had added sugar and are concentrated

which exacerbates Plaintiff medical condition.(see exhibit's

I-4, I-5, H-15)

125. Bread served was from refined grains which exacerbate Plaintiff' medical conditon.(see Exhibit's I-4, I-6, H-16)

126. Nutrients based on 1 portion size, hot dogs, hamburger, Beef Bologna, American Cheese(allergen for milk), Seafood Cakes,(allergen for fish and seafood), Margarine` Meatloaf(found to have allergen for milk), Meatballs ingredients(found to have allergen for fish), Rice(Pilaf flavored), Italian Veal Sausage, Veal Pattie, Turkey Ham, Vannila Pudding, Rice Pudding, Cheese Sauce, Wheat Bread, Assorted Juice (see exhibits H, H-1, H-2, H-3, H-4, H-5, H-6, H-7, H-8, H-9, H-10, H-11, H-12, H-13, H-14, H-15, H-16)

127. AHA SCIENTIFIC STATEMENT 2021 Dietary Guidance to Improve Cardiovascular Health: A Scientific Statement From the American Heart Association **ABSTRACT:** Poor diet quality is strongly associated with elevated risk of cardiovascular disease, morbidity and mortatlity. (see Exhibits I-4, I-5, I-6, I-7, I-8, I-9, I-10)

128. Plaintiff developed pain for approximately one year when urinating which he told medical staff and eventually was found to be a kidney stone at hospital visit, this kidney stone(left renal stone)developed from the diet given him at prison.(see Kidney Function Decline, Exhibit I-10, E)

129. New York Post article dated 1/01/2024 about a nurse who lost her legs and arms due to kidney stone going septic.(see exhibit I-11)

130. On 1/24/2023 Castiglione, Mia P, DO (Doctor of Osteopathy)

at University Hospital recommended plaintiff see a
dietician/nutrionist, as losing weight... help with symptoms,
Plaintiff's medical conditon is exacerbated because he is not
able to exercise enough due to his disability. Also recommended
was placement on the medical unit(see exhibit E-12, I-4, I-5,
I-6, I-7, I-8, I-9, I-10

131.   Info on fish and seafood allergy from Allergy Foundation
South Africa.(see exhibits J-1, J-2, J-3, J-4)

132.   On 1/25/2024 Plaintiff filed a inquiry in regard to having
a special diet and placed on the medical unit.(see exhibit K)

133.   On 1/25/2024 K. Mosley-Massenat responded.

134.   On 1/29/2024 Plaintiff filed a grievance in regard to
having a special diet and being placed on the medical unit.(see
exhibit K-1)

135.   On 2/2/2024 Derrick Bodtmann responded.(see exhibit K-
1)

136.   On 2/2/2024 Plaintiff appealed greivance response.(see
exhibit K-1)

137.   On 2/28/2024 Thurman Miller responded to appeal.(see
exhibit K-1)

138.   On 2/15/2024 Plaintiff was found to have allergy to
fish/seafood. Coincidentaly meatballs is one of several foods
listed  to avoid if you have a allergy to fish, plaintiff after
feeling dizzy after eating dinner the spaghetti meatball meal
passed out and fell in his cell on 9/27/2023.(see exhibit G-1,
J, H-7 at bottom,(allergen)

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

139. Plaintiff has exhausted his admininistrative remedies.

140. Prior to filing this complaint about the practices, acts and failure to act, which resulted in Plaintiffs rights under the U.S. Contitution, AMERICAS WITH DISABILITIES AND OR/REHABILITATION ACT, 8th, 14th amendments being violated. It is well established Law that defendants can not violate Plaintiff's Rights. Defendants knew or should have known that their actions described above were in direct violation of established Court decisions designed to protect Plaintiff's rights under the Constitution of the United States.

141. Plaintiff reasserts paragraphs 1 to 140 and states defendants practices, acts and failure to act are in violation of clearly established Law known or should have been known to Defendnts divesting them of any shield of qualified immunity.

142. Plaintiff reasserts paragraphs 1 to 141 and relays same in regard to state tort claims of Aiding The Commission of Tort, Emotional Distress Negligently Inflicted, Intentional Distress Intentionally Inflicted, Breach Of Duty Proximately Causing Damage (Negligence), Medical Malpractice, Careless Contractual Work Injuring Other, defendants should be divested of any shield of qualified immunity.

## CAUSE OF ACTION I

## AMERICANS WITH DISABILITIES ACT AND/OR REHABILITAION ACT

143. Plaintiff repeats and alleges paragraphs 1 to 142 as though they were fully stated therein.

144.    NJSP violated the Americans with Disabilty Act and/or
Rehabilitation Act (hereafter ADA/Rehabilitation Act) by having
knowledge Plaintiff has a disability and did not accomadate
him by reason of his disability having authority to do so. NJSP
was put on notice via inquiries, grievances and appeals.

145.    Plaintiff is of a small class of inmates who use a cane
and has a serious back condition. Plaintiff also was diagnosed
with high blood  pressure and high cholesterol and subsequently
diagnosed with allergies to fish and seafood and requested a
special diet which was denied, plaintiff is also lactose
intolerant. NJSP refused to intervene to  stop pain and
suffering, causing hunger due to missed meals.

146.    NJSP intentionally discriminated against Plaintiff by
reason of his disability. Other inmates who are disabled can
use the medical unit. Plaintiff was also intentionally
discriminated by reason of his disability in regard to his
request for a medical/special diet for high blood pressure/high
cholesterol, lactose intolerance, fish /seafood. Other inmates
who had disabilitiies in regard to walking, bending, lifting
and ambulated with a wheelchair were housed on medical unit.
Also other medical conditions of inmates were honored (i.e.
diabetic, renal, and inmates who had allergies for peanut butter,
tomatoe, onion, and gluten. And no test was given to plaintiff
for allergy to fish and seafood until after plaintiff was injured
). Plaintiff was never given  anything for his lactose
intolerance.  Plaintiff was told their is no medical/special
diet for his condition's at NJSP. Defendants knew of Plaintiff's

injuries and refused to intervene despite this knowledge causing plaintiff to have hunger pangs, abdominal pain, nausea, dizziness, vomiting.

147.   NJSP, Amy Emrich, A. Gangi, M. Crawford, D. Bodtmann, all intentionally discriminated against plaintiff by reason of his disability. They had prior notice via inquiries, grievances, appeals about plaintiffs disability and his request to move on the medical unit and receive special/medical diet. But all refused to intervene despite knowledge of plaintiff's injuries from falls, liftng property to clean cell and falling downstairs, and hunger pangs.

148.   As a direct and proximate result of Defendants (supra) of Plaintiff's rights under the ADA/REHABILITAION ACT plaintiff suffered unnecessary and wanton pain, and had to be hospitalized in the prison infirmary and sent to the Outside Hospital Emergency Room for several days and given medication.

149.   Plaintiff has a serious back condition Lumbar radiculopathy, Lumbar spndylosis, Degenerative Disease, Lumbar Myofascial Pain and qualifies as disabled.  Plaintiff also qualifies as disabled due to high blood pressure, high cholesterol and his allergies to fish and seafood, and is lactose intolerant.

150.   New Jersey State Prison recieves federal funding.

151.   RCHC, R. Amazon, B. Staller, K. M. Massenat, K. Kaminski, C. Teh, O. Ofoma, violated the ADA/Rehabiliton Act by having knowledge plaintiff was disabled and did not accomodate by reason of his disabilities.

152. RCHC, R. Amazon, B. Staller, K. M. Massenat, K. M. Kaminski, C. Teh, O. Ofoma had <u>access to plaintiff's medical records</u> and were put on notice verbally in writing and via inquiries, grievances, appeals. Plaintiff requested to be housed on medical unit due to his injuries and was denied placement. Plaintiff was told by medical staff that it is a custom, practice or policy that you have to be in a wheelchair to get on medical unit. Plaintiff also requested a special/medical diet due to his high blood pressure and high cholesterol and allergic reactions to fish seafood, and lactose intolerance and was told by medical staff their is no special diet for my medical condition, this is a custom/policy. Plaintiff had pain urinating, Plaintiff had hunger pangs due to missing meals, this request was also denied.

153. Inmates who have medical conditions in regard to diabetes, renal and allergies for gluten, tomatoe, onion, peanut butter are given a medical diet plaintiff was denied for his condition.

154. As a direct and proximate result of Defendants violations of plaintiff's rights under the ADA/REHABILITION ACT Plaintiff had hunger pangs, ear popping, nausea, vomiting, diarrhea,dizziness,abdominal pain, vertigo, panic attacks due to medication, diet or high blood pressure and injured by falls. And due to lifting his property to clean his cell, and fell down the stairs and was placed in infirmary and sent to outside Hospital Emergency Room for several days and given medication.

155. RCHC receives federal funding.

## CAUSE OF ACTION II

## VIOLATION OF PLAINTIFF"S FOURTEENTH AMENDMENT RIGHT"S

156.   Plaintiff repeats and alleges paragraphs 1 to 155 as if same has been set forth herein.

157.   Defendants NJSP, RCHC, A. Gangi, M. Crawford, D. Bodtmann, B. Staller, A. Emrich, K. M. Massenat, K. Kaminski, C. Teh, O. Ofoma, R. Amazon all violated Plaintiff's Fourteenth Amendment Right's.

158.   Other prisoners with disabilities were allowed to be housed on medical unit, (i.e. wheel chair bound etc). Plaintiff has continued to be repeatedly injured by lifting his property to clean his cell and be injured in the shower and using the stairs etc. Prisoners who had diabetes and renal issues were issued a special diet/medical diet, a white inmate who is not a diabetic received a diabetic special/medical diet (2400 calorie diet) received one. Plaintiff was told their is no special/medical diet for his conditon which is high blood pressure and high cholesterol, and lactose intolerance. Plaintiff was never given a allergy test for fish and seafood even though he requested it which lead to him being injured and having prolonged pain and suffering. Plaintiff despite his verbal requests, medical documentaion of illness and inquiries, grievances, appeals was denied special/medical diet, and access to the medical unit.

159. Medication or high blood pressure or heart healthy diet food has caused him blurred vison, panic attacks, dizziness and ear popping, nausea, vertigo.

160.   Plaintiff is of a small class of inmates who use a cane

and has a serious back condition.

161.    Correctional administrative staff who were non-medical refused to intervene despite knowing plaintiff's health and safety was in jeopardy.

162.    All of above defendants actions were direct and proximate resulting in plaintiff's injuries of falls and hunger pangs, pain urinating, and physical deterioraton (i.e. developed a cyst on back and now has a kidney stone which causes pain which were never treated.)

163.    Subsequently Plaintiff had recent injury of lifting his property in his cell and injuring himself because pf severe low back pain. Then later falling downstairs due to extreme back pain which reoccured. Plaintiff was sent to the infirmary in a wheel chair and later was taked out on a stretcher to the outside hospital emergency room where he was several days and received medical treatment.

### CAUSE OF ACTION III

### AMERICANS WITH DISABILITIES ACT AND/OR REHABILITAION ACT.

### (INTERFERENCE)

164.    Plainitff reiterates paragraphs 1 to 163 as though same has been stated therein.

165.    NJSP, RCHC, C. Teh, B. Staller, K. Kaminski, K. M. Maasenat, O. Ofoma, R. Amazon, A. Gangi, D. Bodtmann, M. Crawford, A. Emrich violated plaintiff's rights under ADA Interference.

Plaintiff complained about accomadations/discrimination in regard to being housed on medical unit and receiving special/medical

diet, allergy diet. Defendants interfered in him recieving his request this happened by reason of plaintiff's disabilities. Plaintiff was diagnosed with lumbar stenosis, degenerative disc disease, intractable back pain, high blood pressure/high cholesterol, lactolse intolerance, allergy to fish and seafood. And plaintiff is a qualified individual.

166.   Due to their actions and inactions plaintiff was injured from falls and had hunger pangs, and pain urinating, and experienced atrophy: (i.e. kidney stone, cyst on back causing pain.) Plaintiff had abdominal pain, nausea, dizziness, panic attacks, blurred vision, vertigo, diarrhea.

167.   Correctional administrators could have intervened even though they were not medical staff due to my health and safety being in danger. Instead they acquiesced to the medical defendants behavior.

168.   Plaintiff complained several times about ADA accomadations and this was interferred with by Claudia Teh, Brian Staller, Keelee Kaminski, O. Ofoma, R. Amazon, K. M. Massenat by refusing to do so. Even after Castiglione Mia P, DO (Doctor of Osteopathy) recommended plaintiff be placed on medical unit and be seen by dietitcian/nutrtionist.

### CAUSE OF ACTION IV

### VIOLATION OF PLAINTIFF"S EIGHT AMENDMENT RIGHT'S/DELIBERATE INDIFFERENCE

169.   Plaintiff repeats and alleges Paragraphs 1 to 168 as if same has been set forth herein.

170.   Defendants NJSP, UCHC, A. Emrich, A. Gangi, D. Bodtmann,

M. Crawford, B. Staller, K. M. Massenat, K. Kaminski, R. Amazon, violated Plaintiff's Eight Amendment Right by having knowledge Plaintiff was disabled and did not properly house him which exacerbated his medical conditon causing several falls, sprains which lead him being hospitalized several times and given medication.

171.   Defendants were aware via verbal requests, inquiries, grievances, appeals and medical records.

172.   Defendants supra actions/inactions were deliberate, callous, malicious, intentional and proximate.

173.   Correctional defendants refused to intervene despite knowledge plaintiff's health and safety was in danger. Plaintiff is in danger of a stroke, heart attack due to high blood pressure /high cholesterol. And has repeatedly fell in the past due to low back pain injuring himself causing pain.

174.   High blood pressure or medication or AHA diet caused plaintiff blurred vision, ear popping, dizziness and panic attacks.

175.   Above Defendanats (supra) also were aware of Plaintiff's, medical conditon but did not give him specia/medical diet and allergy diet and did nothing about his lactose intolerance which caused abdominal pain, diarrhea, nausea when eating meals that had milk in it.Even  though he requested it (test for allergy was done after plaintiff was injured and found to have fish seafood allergy), which lead to plaintiff having hunger pangs.Plaintiff also has pain urinating,and atrophied (i.e kidney stone, cyst on back which caused plaintiff pain)

### CAUSE OF ACTION V

### EMOTIONAL DISTRESS NEGLIGENTLY INFLICTED

176.   Plaintiff repeats and alleges pargraphs 1 to 175 as though they were stated fully therein.

177.   NJSP, UCHC, A. Gangi, D. Bodtmann, A. Emrich, M. Crawford, B. Staller, R. Amazon, K. M. Massenat, K. M. Kaminski,, C. Teh, O. Ofoma, caused plaintiff extreme distress that was negligent and proximate.

178.   Defendants (supra) had knowledge of plaintiffs disability and past injuries and hunger pangs but refused to properly house plaintiff and provide special/medical diet. Plaintiff lost sleep and was stressed during these incidents.

179.   Plaintiff was told by medical staff, including Claudia Teh she was following the policy of UCHC and New Jersey Department of Corrections.

### CAUSE OF ACTION VI

### BREACH OF DUTY PROXIMATELY CAUSING DAMAGE (NEGLIGENCE

180.   Plaintiff repeats and alleges paragraphs 1 to 179 as though they were stated fully therein.

181.   NJSP, UCHC, A. Gangi, D. Bodtmann, A. Emrich, M. Crawford, B. Staller, R. Amazon, K. M. Massenat, K. Kaminski, C. Teh, O. Ofoma, R. Amazon,

182.   All Defendannts supra owed Plaintiff a duty which they breached, the duty was created by statute establishing a certain standard of conduct in order to prevent the forseen danger. The injureies were caused proximately by the wrongdoers negligence. Plaintiff was injured due to falls and lifting of

property several times in different areas of the prison on different occasions and subsequently had to be hospitalized and given medication. Plaintiff also suffered hunger pangs and physical deterioration due to not receiving a special/medical diet.

183. All defendants were put on notice either verbally or by inquiry, grievance or appeal and medical defendants had access to plaintiff's medical records.

### CAUSE OF ACTION VII

### MEDICAL MALPRACTICE

184. Plaintiff repeats and alleges paragraphs 1 to 183 if same has been set forth herein.

185. UCHC, B. Staller, C.Teh, O. Ofoma, K. Kaminski, K. M. Massenat, R. Amazon increased the risk of harm to patient which was a substantial factor in producing the plaintiff's injuries. Plaintiff requested medical housing due to injuries and was denied request by medical staff. The medical unit has a elevator, inmate workers who assist in cleaning, hand rails in shower and meals served on the unit etc. Plaintiff was also denied special/medical diet and test for fish and seafood allergy and lactose intolerance which lead to him having hunger pangs and injury. Plaintiff was denied treatment for pain urinating which later was found to be a kidney stone. Plaintiff has a cyst on back which was never treated These denials have lead to plaintiff's physical and mental deterioration.

### CAUSE OF ACTION VIII

### CARELESS CONTRACTUAL WORK INJURING OTHER

186.  Plaintiff repeats and alleges paragraphs 1 to 185 if same has been set forth herein.

187.  UCHC, B. Staller, C. Teh, O. Ofoma, R. Amazon, K. Kaminski, K. M. Massenat failed to undertake their work in a careful and prudent manner causing plaintiff to be injured, this was proximately caused by their failure to exercise that care. Plaintiff was injured several times due to falls and from moving his property, Plaintiff also had hunger pangs from missing meals due to not having a special diet for his chronic illnesses. Not being treated for pain in urinating and cyst on back. Medical Defendants delayed testing plaintiff for fish and seafood allergy which caused plaintiff nausea, vomiting, and dizziness which lead to falls. Plaintiff lactose intolerance was never treated these actions and inactions caused plaintiff to atrophy and have pain and suffering.

## CAUSE OF ACTION IX

## LAW AGAINST DISCRIMINATION

188.  Plaintiff repeats and alleges paragraphs 1 to 187 if same has been set forth herein.

189.  All Defendants supra committed unlawful discrimination, they aided, abetted, compelled and coerced, interfering the same. Plaintiff had the same right as any other disabled prisoner to be housed on the medical unit due to his medical condition. Plaintiff had the right to be given a special/medical diet due to his medical condition. Due to defendants discriminatory acts plaintiff's medical conditon was exacerbated. By reason of plaintiff's disabilities he was discriminiated against.

190.   Plaintiff is a qualified individual with a disability lumbar stenosis, degenerative disc disease, and has blood pressure and high cholesterol, allergy to fish and seafood, and is lactose intolerant.

## PRAYER FOR RELIEF

191.   WHEREFORE, Plaintiff requests the Court grant the following relief: A. Preliminary and Permanent Injunction ordering Defendants NJSP, A. Gangi, M. Crawford, A. Emrich, D. Bodtmann, UCHC, B. Staller, R. Amazon, C. Teh, O. Ofoma, K. Kaminski, K. M. Massenat, to allow him to be housed on the medical unit and stop denying him a special/medical diet for his medical condition's.

B.   Issue a Declatory Judgment stating Defendants violated Plaintiff's Constitutional Right's unde the United States. And Defendants violated Plaintiff's State Rights under the New Jersey tort law. That Defendants NJSP and UCHC violated the Americans with Disabilities Act/Rehabilitationm along with the other Defendants.

C.   Award compensatory damages in the following amounts:

1. $400,000 thousand dollars jointly and severally aainst all Defendants.

D.   Award punitive damages in the following amounts:

2. $400,000 thousabd dollars jointly and severally against all Defendants.

E.      ## DEMAND FOR JURY TRIAL

Pursuant to Fed Civ. P. 38 (b) (1), Plaintiff demands trial by jury regarding any and all factual issues.

F.    Plaintiff seeks recovery of all costs in this suit.

G.    Plaintiff seeks any additional relief this Court deems just proper and equitable.

Dated: 3/12/2024                    Respectfully Submitted
                                    Tremayne Durham

### VERIFICATION

I, TREMAYNE DURHAM declare under the penalty of perjury the foregoing is true and correct, Pursuant to 28 U.S.C. 1746.

                                    Respectfully Submitted,

Date: 3/18/2024                     Tremayne Durham
                                    647007/ OS01613467
                                    NJSP
                                    P.O. Box 861
                                    Trenton, NJ 08625



**Capital Health Regional Medical Center**
750 Brunswick Avenue
Trenton, NJ 08638-4143

**EXHIBIT B**

capitalhealth

| | | | |
|---|---|---|---|
| Patient: | **DURHAM, TREMAYNE** | | |
| MRN: | RMC018016645 | Admit: | 1/2/2022 |
| FIN: | CHS014345552 | Disch: | |
| DOB/Age/Sex: | 11/4/1974    47 years    Male | Admitting: | |
| Location: | RMC ED; HWD; A | Attending: | Tucker DO,Brian |

647007

---

### *Emergency Documentation*

---

Document Type:
Service Date/Time:
Result Status:
Document Subject:
Sign Information:

ED Discharge Summary
1/2/2022 10:27 EST
Auth (Verified)
ED Discharge Instructions
O'Brien APN,Jessica L (1/2/2022 10:27 EST)

# DURHAM, TREMAYNE

**DOB:**   11/04/1974
**MRN:**   RMC018016645
**CMRN:**  18036952
**Visit Date:**  01/02/2022

# Emergency Department Documentation

We would like to thank you for allowing us to assist you with your healthcare needs. The following includes patient education materials and information regarding your injury/illness.

## Diagnosis from Today's Visit
Degenerative disc disease, lumbar
Fall

# What to Do Next

You were treated today on an emergency basis; it may be wise to contact your primary care provider to notify them of your visit today. You may have been referred to your regular doctor or a specialist, please follow up as instructed. If your condition worsens or you can't get in to see the doctor, contact the Emergency Department.

## Instructions from Your Care Team

Rest, Tylenol as needed for pain, Stretching

## You Need to Schedule the Following Appointments
**Follow Up with** Prison Infirmary
**When** Within 1to 2 days                                    **Where:**

If you received the COVID-19 vaccine while in our hospital, you may need a second dose. Second doses are required for both the Pfizer-BioNTech and Moderna COVID-19 vaccines, and your vaccine card should tell you which you received. To schedule this critical second dose please call 609-537-SHOT (7468) so that our staff can provide you with an appointment.

---



**Capital Health Regional Medical Center**

Patient Name: DURHAM, TREMAYNE                FIN:         CHS014345552
        DOB: 11/4/1974                    Attending:  Tucker DO, Brian

| | | |
|---|---|---|
| | *Emergency Documentation* | |

# Medications

| | What | How Much | When | Why | Instructions | Next Dose |
|---|---|---|---|---|---|---|
| *New* | methylPREDNISolone (Medrol Dosepak 4 mg oral tablet) | 1 packets Oral (given by mouth) | As Directed | Degenerative disc disease, lumbar Fall | Duration: 6 Days as directed on package labeling | |

# Allergies

No Known Allergies

---

Report Request ID:  16942994              Page 2 of 9              Print Date/Time:      1/2/2022 10:27 EST

Case 3:24-cv-04033-MAS-TJB    Document 62    Filed 02/23/24    Page 54 of 66 PageID:

Exhibit D

# University Hospital

150 Bergen Street
Newark, New Jersey 07103-2425

# Durham, Tremayne

MRN: 014791224

---

**Castiglione, Mia P, DO**            Progress Notes ⚠ 💬        Encounter Date: 10/18/2023
Fellow                                Sign when Signing Visit
Specialty: ANESTHESIA-PAIN

---

### Rutgers-NJMS Comprehensive Pain Management Center
### Follow-Up Evaluation

**Patient Name:** Tremayne Durham
**MRN:** 014791224
**DOB:** 11/4/1974

**Chief Complaint**
Patient presents with
- Lumbar spondylosis

## HISTORY OF PRESENT ILLNESS

48 year old adult with a PMHx as below who presents with low back pain. The patient was last seen 8/23/23, at which time we recommended to continue with meloxicam, as well as added in gabapentin and tizandine. Due to restrictions in the corrections facility, he was unable to get started on gabapentin, and therefore they started him on duloxetine 30mg daily which has helped him, as well as tizanidine 2mg at night. He is tolerating these medication additions well, with no adverse effect.

The pain is still intermittent. It does fluctuate. It appears like it is worse with him getting out of bed, or changing positioning. Pain is also worse ascending and descending stairs, which is most troublesome to him. He also states that he moves a lot of furniture etc in the facility and this exacerbates him at time. Today, the pain is 8/10 in severity, but can get down to 6/10.

He continues doing the PT that he learned in the past, and we emphasized that he should be working on core strength.

**Interventional Pain Procedure History:**
Denies

**Percent Relief from previous procedure: na%**

**Today's VAS Score: 8/10**

> **Past Medical History:**
> **Past Medical History:**
> Diagnosis                                Date
> - Essential hypertension

**Past Surgical History:**
No past surgical history on file.

**Medications *prior* to today's visit:**

Current Outpatient Medications:
- LISINOPRIL-HCTZ (PRINZIDE, ZESTORETIC) 10-12.5 MG Tablet, Take 1 Tablet by mouth in the morning., Disp: , Rfl:
- salicyclic acid-colloidal sulfur (SEBEX) 2-2 % SHAM, apply Topically to affected area ONCE., Disp: , Rfl:

- meloxicam (MOBIC) 15 MG Tablet, Take 15 mg by mouth in the morning., Disp: , Rfl:

**Allergies:** Fish allergy, Shellfish-derived products, and Tomato

**Review of Systems:**
> GENERAL: NEGATIVE for Weight Loss, NEGATIVE for Weight Gain, NEGATIVE for Fever, NEGATIVE for Chills, NEGATIVE for Night Sweats
> EYES: Denies Visual changes
> RESPIRATORY: NEGATIVE for Dyspnea, NEGATIVE for Cough, NEGATIVE for Wheezing
> CARDIOVASCULAR: Denies Chest Pain, Denies Paplitations
> GI: Denies N/V, Denies constipation, Denies diarrhea, Denies abdominal pain, Denies anorexia, Denies early satiety
> GU: Denies urinary incontinence
> PSYCH: Denies depressive symptoms, Denies anxious symptoms, Denies suicidal ideation/plan
> VASCULAR: DENIES unhealing wounds or ulcerations
> SKIN: Denies rashes, Denies skin changes
> Neuro:NEGATIVE focal deficits
> IMMUNOLOGIC: No Swelling or pain at groin/axilla

Previous information from initial H&P and subsequent visits reviewed as well as CC/HPI entered by ancillary staff.

**ELEMENTS OF PHYSICAL EXAM**

**Physical Exam:**
Blood pressure 120/80, pulse 87, temperature 98.4 °F (36.9 °C), height 6' 1" (185.4 cm), weight 114.3 kg (252 lb), SpO2 99 %.Body mass index is 33.25 kg/m². ***

> GEN: No Acute Distress
> PSYCHIATRIC: Awake, alert and oriented; Normal mood and affect
> EYES: EOMI
> EARS, NOSE, MOUTH AND THROAT: NC/AT External inspection of ears and nose no gross abnormalities
> RESPIRATORY: Nonlabored, Regular
> CARDIOVASCULAR: No chest wall tenderness
> GASTROINTESTINAL: Abdominen Soft, Nontender
> SKIN: Warm and dry, no rashes
> MUSCULOSKELETAL: Examination of gait and station are WNL, he is using a cane; lumbar Paraspinal Tenderness elicited; ROM reveals painful lumbar flexion to 30 degrees, painful lumbar extension to about 10 degrees. Kemps positive on the right and left. FABER positive on the right and left.
> NEUROLOGIC: Sensation is hypoesthetic in the L4 distribution on the right, but equal throughout the rest of the BL LE.; Strength is 4/5 throughout RLE, 5/5 throughout LLE; SLR positive BL with back pain and tingling in his toes at about 20 -30 degreesR

**Radiologic Imaging**
Pertinent findings include: ***
- MRI reviewed from 5/19/23 and will be scanned in later
Briefly: Multiple disc bulge, with facet and ligamentous hypertrophy, and neuroforaminal stenosis BL at L3-4, l4-5, l5-1.

**IMPRESSION / PLAN OF CARE**

Tremayne was seen today for lumbar spondylosis.

Diagnoses and all orders for this visit:

**Lumbar spondylosis**

**Degenerative disc disease, lumbar**

**Lumbar radiculopathy**

Exhibit D-2

Tremayne Durham is a 48 year old adult with low back pain secondary to widespread lumbar spine pathology presenting for follow up. He does admit that he is improving with our medication additions and is experiencing no adverse reactions. Therefore, we will
1. Continue meloxicam 15mg daily
2. Continue tizanidine 2mg nightly
3. Increase duloxetine to 60mg daily

Additionally, as ascending and descending steps are a root cause for his exacerbation of pain, would recommend he is on a flat floor to facilitate healing as well as to not worsen his state. He should use caution with his daily activities. We did discuss with him that there is no instability in his spine or critical cord compression, but that acute flares in his pain may worsen after periods of aggressive movement etc.

For now, we will continue with conservative methods. We did discuss possibly performing injections in the future. We will follow up in 3 months to assess his response to medications, and physical exercise.

**Follow Up: 3 months**

Patient seen, discussed, and examined with attending, Dr. Zhang

Mia Castiglione, DO
Pain Management Fellow, PGY-5
Division of Pain Medicine
Department of Anesthesiology and Perioperative Care
Rutgers New Jersey Medical School

## Note Details

| | | | |
|---|---|---|---|
| Author | Castiglione, Mia P, DO | File Time | 10/18/2023 12:03 PM |
| Author Type | Fellow | Status | Unsigned |
| Last Editor | Castiglione, Mia P, DO | Specialty | ANESTHESIA-PAIN |

Office Visit on 10/18/2023

## Additional Documentation

| Vitals: | BP 120/80 (BP Location: Left arm, Patient Position: Sitting) Pulse 87 Temp 98.4 °F (36.9 °C) |
|---|---|
| | Ht 6' 1" (185.4 cm) Wt 114.3 kg (252 lb) SpO2 99% BMI 33.25 kg/m² BSA 2.43 m² |
| | Pain Sc 8 (Eight) (Loc: back) |
| Flowsheets: | MAP, Anthropometrics, Fall Risk Screening - MU, PHQ 2/9 Depression Scale |
| SmartForms: | UMD AMB SCREENING FORM |

## Transcription Information

## Orders Placed
None

## Medication Changes

As of 10/18/2023 10:58 AM

None

*Exhibit D-3*

## Visit Diagnoses

Primary: **Lumbar spondylosis** M47.816
Degenerative disc disease, lumbar M51.36
Lumbar radiculopathy M54.16

**New Jersey State Prison-Main**
Trenton, NJ
Fax:

*January 2, 2024*
Page 1
Hospital Discharge Summary

## TREMAYNE DURHAM
Male  DOB:11/04/1974  Booking #:647007  SBI:OS01613467
Ins: NJDOCIC (NJDOCIP)

**12/23/2023 - Hospital Discharge Summary: Chart Note for CHRMC Discharge Summary**
**Provider: Jacqueline Bobson, MD**
**Location of Care: New Jersey State Prison-Main**

### Chart Note

**Narrative:**

Discharge Summary written 12/23/2023 at 11:45 EST by Dr. Srie Widuri at CHRMC. Transcribed by myself below:

**DISCHARGE DOCUMENTATION**

Reason for Hospitalization (Primary Dx and Secondary Dx)
1. Degenerative lumbar spinal stenosis
2. Intractable back pain
3. Ambulatory dysfunction
4. Hypertension
5. Left renal stone

HPI
Patient is a 49-year-old male with past medical history of hypertension, degenerative disease of the spine who presents in ER with complaints of back pain. According to the patient he was moving around heavy boxes in his cell today after which he developed severe back pain, it was shooting pain which did went down his back, 10/10 in intensity. he later tried to go ahead with his activities and climb the stairs. however the pain recurred so badly on climbing stairs that he almost had a fall. he did not lose consciousness or hurt himself. Patient states that he has had back pain since 2017 and he was told he has degenerative changes in the spine. He has intermittent pain but today it got unusually worse. He takes pain relief medications on regular basis.
patient denies any fever, any chest pain, any shortness of breath, abdominal pain. he is able to pass urine. He has not noticed any particular weakness in his body. He walks with the help of a cane at baseline.
As per ER charting there was concern for saddle anesthesia and patient received dexamethasone IV stat. He did pass urine later. CT spine done on this admission is consistent with degenerative changes of the spine, a prior imaging of MRI is present from May 2023. But ketorolac in the ER which has improved his pain.

Hospital Course

    Significant Findings
    **CT Spine Lumbar w/o contrast 12/22/2023:**
    No acute fracture or malalignment. Advanced multilevel spondylosis. Please refer to MRI lumbar spine 5/19/2023 for further details.
    Nonobstructive left renal calculus

the patient was admitted for management of back pain symptomatically. He was seen by Neurosurgery who diagnosed him with acute lumbar strain and no need for inpatient care. Pain has improved c/w yesterday. Patient was seen by Physical Therapy and he is able to walk. Patient seemed stable for discharge back to facility. Discussed with Dr. Nwachukwu at facility, in agreement.

Consults and Diagnostic Tests

**New Jersey State Prison-Main**
Trenton, NJ
Fax:

**TREMAYNE DURHAM**
Male  DOB:11/04/1974  Booking #:647007  SBI:OS01613467
Ins: NJDOCIC (NJDOCIP)


Dr. Meagher, Neurosurgery

Patient's Condition and Discharge Disposition
Stable back to facility

Medications at Discharge
NEW:
Tylenol 325mg: 2 tabs PO every 4 hours as needed pain, mild.
Baclofen 10mg: 1 tab PO 3 times a day for 3 days

CHANGED:
Lisinopril 5mg: 1 tab PO every day

UNCHANGED:
Meloxicam 15mg: 1 tab PO every day. Back pain.

DISCONTINUED:
Tizanidine 2mg: 2 tab PO every day. At beditme.

Physical Exam
T 36.5ºC
HR 65
RR 17
BP 123/69
SpO2 98%
Wt 109.7 kg

Const: NAD
Resp: CTA, no wheezing, no rhonchi, no rales
CVS RRR, normal S1/S2, no JVD, no murmur, no edema, pulses 2+
GI: soft, nontender, normal bowel sounds, no distension
Skin: warm, dry, normal color, no lesions
Neuro: no focal deficits, sensation intact, follows commands, face symmetrical
Awake, alert, oriented to person/place/time
Psych: normal affect, well-groomed

Follow Up Plan
Follow up with primary care provider


## Problems/Allergies/Observation Changes


## Orders to be Processed and/or Transcribed

**New Jersey State Prison-Main**
Trenton, NJ
Fax:

**TREMAYNE DURHAM**
Male  DOB:11/04/1974  Booking #:647007  SBI:OS01613467
Ins: NJDOCIC (NJDOCIP)

]

**Electronically Signed by Jacqueline Bobson, MD on 12/29/2023 at 3:19 PM**

**Capital Health Regional Medical Center**

Patient Name: DURHAM, TREMAYNE          FIN:          CHS015160354
         DOB: 11/4/1974                       Attending: Mohsin MD,Saadia

> *Discharge Instructions*

# Allergies

No Known Allergies

# Problems

**Ongoing -** Any problem that you are currently receiving treatment for.
   Degenerative disc disease, lumbar
   Fall

# OPIOID MEDICATION USE

If you received a prescription for an opioid medication, be aware of risks associated with their use: dependency/addiction, overdose, potential for serious side effects when taken with other drugs or alcohol******

Our goal at Capital Health is to keep you informed and to make sure you have everything you need

If you do not understand what was explained to you, please ask your nurse or doctor

I HAVE RECEIVED, READ AND UNDERSTAND EDUCATION PROVIDED

**PLEASE DISCARD ANY OLD MEDICATION LISTS.** If any CHANGES occur with your medications such as, dose change, new medication, or doctor tells you to stop taking a medication;
PLEASE update this list. Your Medication List should be carried with you at all times.

Please provide a copy of this list to your primary Doctor.

Unused medications that remain in your medicine cabinet are susceptible to theft and misuse.

To prevent medications from getting into the wrong hands, New Jersey's Office of the Attorney General and Division of Consumer Affairs urge you to properly dispose of your expired and unwanted prescription medicine at a nearby Project Medicine Drop location.

# Education Materials

# Lumbar Strain

A lumbar strain, which is sometimes called a low-back strain, is a stretch or tear in a muscle or the strong cords of tissue that attach muscle to bone (tendons) in the lower back (lumbar spine). This type of injury occurs when muscles or tendons are torn or are stretched beyond their limits.

Report Request ID:  39521998          Page 11 of 34          Print Date/Time:  1/9/2024 10:50 EST



Exhibit E-4

**Capital Health Regional Medical Center**

Patient Name: DURHAM, TREMAYNE
DOB: 11/4/1974

FIN: CHS015160354
Attending: Mohsin MD,Saadia

### Discharge Instructions

Lumbar strains can range from mild to severe. Mild strains may involve stretching a muscle or tendon without tearing it. These may heal in 1–2 weeks. More severe strains involve tearing of muscle fibers or tendons. These will cause more pain and may take 6–8 weeks to heal.

## What are the causes?

This condition may be caused by:

- Trauma, such as a fall or a hit to the body.
- Twisting or overstretching the back. This may result from doing activities that need a lot of energy, such as lifting heavy objects.

## What increases the risk?

This injury is more common in:

- Athletes.
- People with obesity.
- People who do repeated lifting, bending, or other movements that involve their back.

## What are the signs or symptoms?

Symptoms of this condition may include:

- Sharp or dull pain in the lower back that does not go away. The pain may extend to the buttocks.
- Stiffness or limited range of motion.
- Sudden muscle tightening (spasms).

## How is this diagnosed?

This condition may be diagnosed based on:

- Your symptoms.
- Your medical history.
- A physical exam.
- Imaging tests, such as:
  - X-rays.
  - MRI.

## How is this treated?

Treatment for this condition may include:

---

Report Request ID:  39521998              Page 12 of 34              Print Date/Time:     1/9/2024 10:50 EST

**Capital Health Regional Medical Center**

Patient Name: DURHAM, TREMAYNE      FIN:     CHS015160354
DOB: 11/4/1974      Attending:   Mohsin MD,Saadia

---

### *Discharge Instructions*

- Your back pain does not improve after 6 weeks of treatment.
- Your symptoms get worse.

### Get help right away if:

- Your back pain is severe.
- You are unable to stand or walk.
- You develop pain in your legs.
- You develop weakness in your buttocks or legs.
- You have difficulty controlling when you urinate or when you have a bowel movement.
  - You have frequent, painful, or bloody urination.
  - You have a temperature over 101.0°F (38.3°C)

### Summary

- A lumbar strain, which is sometimes called a low-back strain, is a stretch or tear in a muscle or the strong cords of tissue that attach muscle to bone (tendons) in the lower back (lumbar spine).
- This type of injury occurs when muscles or tendons are torn or are stretched beyond their limits.
- Rest and return to your normal activities as told by your health care provider. If directed, apply heat and ice to the affected area as often as told by your health care provider.
- Take over-the-counter and prescription medicines only as told by your health care provider.
- Contact a health care provider if you have new or worsening symptoms.

This information is not intended to replace advice given to you by your health care provider. Make sure you discuss any questions you have with your health care provider.

Document Released: 12/18/2006 Document Revised: 10/17/2019 Document Reviewed: 10/17/2019 Elsevier Interactive Patient Education © 2020 Elsevier Inc.

# Nutrition Education/Recommendations

**Diet/Nutrition:**
**Diet Restrictions:**
**Diet Texture Modified:**
**Dietary Supplements:**
**Meal Frequency:**
**Parenteral Feedings:**
**Tube Feedings:**
**Vitamin/Mineral Supplementation:**
**Weight Gain:**
**Weight Reduction:**
**Education Materials Provided:**
**Care Coordination:**

---

*Exhibit E-6*

**Capital Health Regional Medical Center**

Patient Name: DURHAM, TREMAYNE
DOB: 11/4/1974

FIN:        CHS015160354
Attending:  Mohsin MD,Saadia

## Discharge Instructions

- Rest.
- Applying heat and cold to the affected area.
- Over-the-counter medicines to help relieve pain and inflammation, such as NSAIDs.
- Prescription pain medicine and muscle relaxants may be needed for a short time.
- Physical therapy.

### Follow these instructions at home:

**Managing pain, stiffness, and swelling**





- If directed, put ice on the injured area during the first 24 hours after your injury.
  - Put ice in a plastic bag.
  - Place a towel between your skin and the bag.
  - Leave the ice on for 20 minutes, 2–3 times a day.
- If directed, apply heat to the affected area as often as told by your health care provider. Use the heat source that your health care provider recommends, such as a moist heat pack or a heating pad.
  - Place a towel between your skin and the heat source.
  - Leave the heat on for 20–30 minutes.
  - Remove the heat if your skin turns bright red. This is especially important if you are unable to feel pain, heat, or cold. You may have a greater risk of getting burned.

**Activity**

- Rest and return to your normal activities as told by your health care provider. Ask your health care provider what activities are safe for you.

RECEIVED 01/08/2024 22:55
Fax Server 1/08 2024 10:50 AM

Exhibit E-7

**Capital Health Regional Medical Center**

Patient Name: DURHAM, TREMAYNE      FIN:    CHS015160354
DOB: 11/4/1974                        Attending:   Mohsin MD,Saadia

### *Discharge Instructions*

- Do exercises as told by your health care provider.

**Medicines**

- Take over-the-counter and prescription medicines only as told by your health care provider.
- Ask your health care provider if the medicine prescribed to you:
  - Requires you to avoid driving or using heavy machinery.
  - Can cause constipation. You may need to take these actions to prevent or treat constipation:
    - Drink enough fluid to keep your urine pale yellow.
    - Take over-the-counter or prescription medicines.
    - Eat foods that are high in fiber, such as beans, whole grains, and fresh fruits and vegetables.
    - Limit foods that are high in fat and processed sugars, such as fried or sweet foods.

**Injury prevention**



To prevent a future low-back injury:

- Always warm up properly before physical activity or sports.
- Cool down and stretch after being active.
- Use correct form when playing sports and lifting heavy objects. Bend your knees before you lift heavy objects.
- Use good posture when sitting and standing.
- Stay physically fit and keep a healthy weight.
  - Do at least 150 minutes of moderate-intensity exercise each week, such as brisk walking or water aerobics.
  - Do strength exercises at least 2 times each week.

**General instructions**

- **Do not** use any products that contain nicotine or tobacco, such as cigarettes, e-cigarettes, and chewing tobacco. If you need help quitting, ask your health care provider.
- Keep all follow-up visits as told by your health care provider. This is important.

## Contact a health care provider if:

---

1/24/24, 11:42 AM   Durham, Tremayne (MRN 014791224) Encounter Date: 01/24/2024

# University Hospital

Exhibit E-11

150 Bergen Street
Newark, New Jersey 07103-2425

# Durham, Tremayne

MRN: 014791224

---

**Castiglione, Mia P, DO**
Fellow
Specialty: ANESTHESIA-PAIN

Progress Notes ⚠ 🔲
Sign when Signing Visit

Encounter Date: 1/24/2024

### Rutgers-NJMS Comprehensive Pain Management Center
### Follow-Up Evaluation

**Patient Name:** Tremayne Durham
**MRN:** 014791224
**DOB:** 11/4/1974

**Chief Complaint**
Patient presents with
• Lumbar spondylosis

## HISTORY OF PRESENT ILLNESS

49 year old adult with a PMHx as below who presents with low back pain.  The patient was last seen 10/18/23, at which time we did increase his duloxetine and continued tizanidine, meloxicam.

He did come back today with paperwork stating he is only on meloxicam and no longer on tizanidine and duloxetine. The pain can get down to a 4/10 with the meloxicam. He does think that the duloxetine and tizanidine were helping, and is not sure why they haven't been continued.

The pain remains intermittent, fluctuating and worse with changing position.
The pain is worse when he goes up the stairs, and when he moves furniture. For instance, he did fall last month after trying to move his property and had to go to the hospital. This puts a major strain on his back, and is unsafe.

He is doing exercises in the cell, stretches which helps to relieve the pressure.

**Interventional Pain Procedure History:**
denies
**Percent Relief from previous procedure: %**

**Today's VAS Score: 6/10**

**Past Medical History:**
**Past Medical History:**
Diagnosis                                          Date
• Essential hypertension

**Past Surgical History:**
No past surgical history on file.

**Medications *prior* to today's visit:**

Current Outpatient Medications:
• LISINOPRIL-HCTZ (PRINZIDE, ZESTORETIC) 10-12.5 MG Tablet, Take 1 Tablet by mouth in the morning., Disp: , Rfl:
• salicyclic acid-colloidal sulfur (SEBEX) 2-2 % SHAM, apply Topically to affected area ONCE.,

4. Please have patient see a dietitian/nutritionist, as losing weight will also offload stress on his back and help with his symptoms.

I would also recommend that the patient **reside on the medical unit,** as he continues to injure himself and fall while on the other unit. He should continue to use caution with his daily activities, and should not be lifting heavy objects. We did discuss with him that there is no instability in his spine or critical cord compression, but that acute flares in his pain and activity may worsen after periods of aggressive movement etc.

For now, we will continue with conservative methods. We did discuss possibly performing injections in the future. We will follow up in 3 months to assess his response to medications, and physical exercise.

**Follow Up: 3 months**

Patient seen, discussed, and examined with attending, Dr. Zhang.

Mia Castiglione, DO
Pain Management Fellow, PGY-5
Division of Pain Medicine
Department of Anesthesiology and Perioperative Care
Rutgers New Jersey Medical School

## Note Details

| | | | |
|---|---|---|---|
| Author | Castiglione, Mia P, DO | File Time | 1/24/2024 11:42 AM |
| Author Type | Fellow | Status | Unsigned |
| Last Editor | Castiglione, Mia P, DO | Specialty | ANESTHESIA-PAIN |

Office Visit on 1/24/2024

## Additional Documentation

Vitals:    BP 133/59 (BP Location: Right arm, Patient Position: Sitting) Pulse 69 Temp 98.3 °F (36.8 °C)
Ht 6' 1" (185.4 cm) Wt 108 kg (238 lb) BMI 31.40 kg/m² BSA 2.36 m² Pain Sc 6 (Six) (Loc: back)

Flowsheets:  MAP, Anthropometrics, Fall Risk Screening - MU, PHQ 2/9 Depression Scale

## Transcription Information

## Orders Placed

None

## Medication Changes

As of 1/24/2024 11:04 AM

None

## Visit Diagnoses

Primary: **Lumbar radiculopathy** M54.16
Lumbar spondylosis M47.816
Degenerative disc disease, lumbar M51.36

Myofascial pain M79.18        Exhibit E-13

Page: 1

| Ref# NJSP23050595 | Housing:NJSP-WEST-1 RIGHT-FLATS-CELL 05 | Date Created:12/29/2023 |
|---|---|---|
| ID#: OS01613467 | Name:DURHAM,TREMAYNE | |
| Form:Inquiries | Subject:Medical | Description:Other |
| Urgent:No | Time left:n/a | Status:Closed |

Original Form
*12/29/2023 7:30:52 AM : ( os01613467 ) wrote*
On 12/22/2023 while on 1right I was cleaning my cell and I moved my property and I had back pain that went down to my legs, subsequently when I attempted to go up the stairs the pain was still there and I fell.

Communications / Case Actions
*12/29/2023 7:30:52 AM : ( os01613467 ) wrote*
Form has been submitted

*1/11/2024 7:20:25 PM : ( Xiangrong Zhou ) wrote*
You were seen by provider on 1/2/24.

*1/11/2024 7:20:28 PM : ( Xiangrong Zhou ) wrote*
Closed incarcerated individual form

Admin Log
*1/11/2024 7:18:55 PM : ( Xiangrong Zhou ) wrote*
Form was viewed by Xiangrong Zhou and the status was changed to Pending.

*1/11/2024 7:20:25 PM : ( Xiangrong Zhou ) wrote*
Responded to incarcerated individual

Manual Fill-In

| Ref# NJSP24001350 | Housing:NJSP-WEST-1 RIGHT-FLATS-CELL 05 | Date Created:01/12/2024 |
|---|---|---|
| ID#: OS01613467 | Name:DURHAM,TREMAYNE | |
| Form:Grievance | Subject:Administration | Description:ADA |
| Urgent:No | Time left:n/a | Status:Closed |

Original Form
*1/12/2024 9:25:20 AM : ( os01613467 ) wrote*
I reiterate NJSP23050595 I have a back condition and on 12/22/2023 in the morning I was cleaning my cell and moving my property, I lifted my storage bins and boxes and had serious back pain and fell in my cell. Later when lunch was called I was going up the stairs when the pain went from my back to my legs and I fell this caused me pain. If I was housed on the medical unit I could have got assistance with this. I already requested this from several medical staff: Claudia Teh, O. Oforna, B. Staller, R. Amazon, and other medical staff and correctional staff whose names I can not recall at this time.

Communications / Case Actions
*1/12/2024 9:25:20 AM : ( os01613467 ) wrote*
Form has been submitted

*1/22/2024 1:41:10 PM : ( Derrick Bodtmann ) wrote*
Administration or custody will not house you on a medical unit without the request coming from medical. If you have spoken to them, and they have not requested it, we will not facilitate this move.

*1/22/2024 1:41:13 PM : ( Derrick Bodtmann ) wrote*
Closed incarcerated individual form

*1/25/2024 9:37:15 AM : ( os01613467 ) wrote*
Case Appealed.

*1/25/2024 9:37:15 AM : ( os01613467 ) wrote*
On 1/24/2024 Castiglione, Mia P, DO at University Hospital recommended that I reside on the medicl unit.

*2/5/2024 2:56:14 PM : ( Amy Emrich ) wrote*
Please discuss this with the medical department.

*2/5/2024 2:56:18 PM : ( Amy Emrich ) wrote*
Closed appealed incarcerated individual form

Admin Log
*1/22/2024 1:39:48 PM : ( Derrick Bodtmann ) wrote*
Form was viewed by Derrick Bodtmann and the status was changed to Pending.

*1/22/2024 1:41:10 PM : ( Derrick Bodtmann ) wrote*
Responded to incarcerated individual

*2/5/2024 2:56:14 PM : ( Amy Emrich ) wrote*
Responded to incarcerated individual

Manual Fill-In